Filed 3/3/15  P. v. Montoya CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B249369 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA396513) |
| v. | |
| RICHARD RONALD MONTOYA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rand S. Rubin, Judge.  Remanded, with directions.

Law Offices of James Koester and James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Deputy Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendant and appellant, Richard Ronald Montoya, appeals a court order requiring him to reimburse the county for the cost of legal assistance it provided for him. Montoya was acquitted following a jury trial on charges of making two criminal threats (Pen. Code, § 422).[1]

The matter is remanded to the trial court for further proceedings.

## BACKGROUND

Montoya was charged with two counts of making of criminal threats (§ 422). Following a jury trial, he was acquitted on both counts. Thereafter, the trial court ordered him, pursuant to section 987.8, to reimburse the county $10,274 for the cost of legal assistance.

On January 31, 2013, when it initially announced its intention to order Montoya to make reimbursement in this amount, the trial court said: "I am ordering the defendant to pay for the services of the Office of the Public Defender. The new fees for the Public Defender, and this just came out: felony trial, attorney's fees, $9,249. Investigation costs, $1,025." The court ordered Montoya "to be seen by the financial evaluator [so he can] be evaluated regarding payment" of these costs. When defense counsel said he would be filing a motion "objecting to certain fees," the trial court replied: "I'll tell you what, this is the approved L.A. County Public Defender's cost recovery fees for 2012 and 2013 . . . . [¶] I'm ordering the defendant to be seen by the office of the financial evaluator today before you leave the building, and I'm going to order you back for a report from the financial evaluator."

On March 5, 2013, a financial evaluator with the Revenue Enhancement Unit of the Los Angeles County Superior Court issued a report regarding Montoya's economic status. The report describes Montoya as a 47-year-old single man, currently residing in Scottsdale, Arizona, who "claims he is presently unemployed and receiving public assistance in the form of food stamps in the amount of $200. [¶] In addition, he claims to supplement his income performing odd jobs or labor work earning $600 to $800 a

---

[1]     All further references are to the Penal Code unless otherwise specified.

month. Furthermore, [Montoya] claims he is in the entertainment industry as an actor. However, at this time, he claims to have no job offers." The report included an "employment history" showing Montoya had worked for various non-entertainment employers from 1997 through 2007, that he owed the U.S. Department of Education almost $28,000, and that he owned a 1999 BMW worth almost $5,000 in fair condition (although Montoya claimed it was worth only $2,500). The financial evaluator concluded Montoya "does not meet the Court's established criteria to be placed on a "NO ABILITY" or "INDIGENT" status. Furthermore, [he] has the ability to seek and hold employment in order to reimburse the county for the legal services rendered by the court [*sic*]. [¶] In addition, based on county guidelines the defendant has the present ability to meet his financial obligation." The evaluator concluded: "I recommend the court order the defendant to make payments of $25 a month for the legal services rendered; or on the terms and conditions fixed by the court."

On April 17, 2013, Montoya returned to court and was shown a copy of the financial evaluator's report. The trial court said it had read the report and "based on the county guidelines, I find the defendant has the present ability to meet the financial obligation of payment of $25 a month. I will order the defendant to pay attorney fees of $9,249 and investigator fees of $1,025 to the County of Los Angeles at a rate of $25 a month."

Montoya now appeals this order requiring him to reimburse the county by making on-going monthly payments.

## CONTENTIONS

1. The trial court had no jurisdiction to order Montoya to make monthly payments for more than six months.

2. There was insufficient evidence to support the finding Montoya owed the county $10,274.

3. There was insufficient evidence to support the finding Montoya had the ability to pay the court-ordered reimbursement amount.

3

**DISCUSSION**

1. *Trial court did not err by ordering Montoya to make on-going monthly payments.*

Montoya contends the trial court had no jurisdiction to order him to reimburse the county for the legal assistance it provided by making monthly payments of $25 for more than six months. This claim is meritless.

a. *Legal principles.*

Section 987.8, subdivision (b), provides: "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, or upon the withdrawal of the public defender or appointed private counsel, the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof. The court may, in its discretion, hold one such additional hearing within six months of the conclusion of the criminal proceedings. The court may, in its discretion, order the defendant to appear before a county officer designated by the court to make an inquiry into the ability of the defendant to pay all or a portion of the legal assistance provided."

Subdivision (g) of section 987.8 provides:

"(g) As used in this section:

"(1) 'Legal assistance' means legal counsel and supportive services including, but not limited to, medical and psychiatric examinations, investigative services, expert testimony, or any other form of services provided to assist the defendant in the preparation and presentation of the defendant's case.

"(2) 'Ability to pay' means the overall capability of the defendant to reimburse the costs, or a portion of the costs, of the legal assistance provided to him or her, and shall include, but not be limited to, all of the following:

"(A) The defendant's present financial position.

"(B) The defendant's reasonably discernible future financial position. In no event shall the court consider a period of more than six months from the

4

date of the hearing for purposes of determining the defendant's reasonably discernible future financial position.  Unless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a reasonably discernible future financial ability to reimburse the costs of his or her defense.

"(C)  The likelihood that the defendant shall be able to obtain employment within a six-month period from the date of the hearing.

"(D)  Any other factor or factors which may bear upon the defendant's financial capability to reimburse the county for the costs of the legal assistance provided to the defendant."

As our Supreme Court said in *People v. Flores* (2003) 30 Cal.4th 1059, 1063: "Recoupment statutes such as section 987.8(b) reflect a legislative concern for ' "replenishing a county treasury from the pockets of those who have directly benefited from county expenditures." ' [Citation.]'   "Recoupment proceedings may protect the State from fraudulent concealment of assets and false assertions of indigency.  Many States, moreover, face expanding criminal dockets, and this Court has required appointed counsel for indigents in widening classes of cases and stages of prosecution.  Such trends have heightened the burden on public revenues, and recoupment laws reflect legislative efforts to recover some of the added costs." '  [Citation.]"

b.  *Discussion*.

Montoya contends section 987.8 limits the time within which a defendant may be ordered to make reimbursement payments to, at most, six months.  In support of this claim, he cites the language of the reimbursement statute and the holding in *People v. Viray* (2006) 134 Cal.App.4th 1186.  Neither source supports Montoya's claim.

Subdivision (g)(2)(B) of section 987.8 provides that, in making a determination regarding the defendant's financial ability to reimburse the county for legal assistance, the trial court may consider "[t]he defendant's reasonably discernible future financial position," but "[i]n no event shall the court consider a period of more than six months from the date of the hearing for purposes of determining the defendant's reasonably discernible future financial position."  Montoya reads this language as prohibiting a court

5

from ordering monthly payments for longer than six months. We cannot agree with this interpretation of the statute's language. The statute merely says that, *in determining the defendant's financial ability to make reimbursement payments in the future, a trial court may look no further ahead than six months*. We agree with the Attorney General that "[n]othing in section 987.8, or the underlying purpose of the statute, supports appellant's contention that the entire court order must be paid within six months."

Montoya's reliance on *People v. Viray*, *supra*, 134 Cal.App.4th 1186, is equally misplaced. Montoya correctly states *Viray* reversed a reimbursement order in part because there was insufficient evidence the defendant would be able to complete the ordered $9,200 payment within six months of the hearing. *Viray* concluded, "There is . . . a dearth of evidence that defendant would be able to pay $9,200 in defense costs over the six months following the hearing." (*Id*. at p. 1217). But Montoya is ignoring the fact the trial court in *Viray* apparently ordered the defendant to *complete the reimbursement within six months*. As the court of appeal explained: "Near the end of the hearing defense counsel [for Viray] . . . stated, 'We're asking the Court to assess attorney's fees.'[2] Counsel referred to a written request seeking $9,200 in fees. After reviewing the request, the court ordered defendant 'to reimburse the county for the public defender's fees . . . in the sum of $9,200 . . . *as of July the 29th*.' " (*Id*. at pp. 1193-1194, italics added.)

*Viray* did not hold the trial court erred by extending reimbursement payments for longer than six months. Rather, *Viray* held there was no evidence the defendant had the financial ability to pay back the county the full amount of $9,200 *within six months*,

---

[2] The oddity of the defendant's own public defender being the one who moved for a reimbursement order was addressed by *Viray* in the context of a waiver claim by the Attorney General: "We do not believe that an appellate forfeiture can properly be predicated on the failure of a trial attorney to challenge an order concerning *his own fees*. It seems obvious to us that when a defendant's attorney stands before the court asking for an order taking money from the client and giving it to the attorney's employer, the representation is burdened with a patent conflict of interest and cannot be relied upon to vicariously attribute counsel's omissions to the client. In such a situation the attorney cannot be viewed, and indeed should not be permitted to act, as the client's representative." (*People v. Viray*, *supra*, 134 Cal.App.4th at p. 1215.)

which is apparently what the defendant had been ordered to do. Hence, *Viray* does not help Montoya because he was not ordered to complete reimbursement within six months. Indeed, Montoya himself complains the trial court in effect gave him 34 years to complete reimbursement at the rate of $25 per month.[3]

Hence, we conclude the trial court did not err by ordering Montoya to complete his section 987.8 reimbursement by making monthly installments of $25.

2. *There was insufficient evidence of the total actual costs to be repaid.*

Montoya contends there was insufficient evidence to support the trial court's determination he owed the county $10,274, arguing: "There was no evidence the public defender's office submitted any kind of an itemized breakdown of the actual amount of time it expended on appellant's case or of any investigative or expert witnesses fees it paid on appellant's behalf. Rather, it appears the court determined the fees based upon some kind of a generalized fee schedule ostensibly used by the public defender's office. . . . This simply was not sufficient to have established the claimed $10,474.00."

As Montoya maintains, it appears that when section 987.8 talks about ordering a defendant "to reimburse the costs . . . of the legal assistance provided" (§ 987.8, subd. (g)(2)), the statute is referring to the actual cost incurred by the county. (See *People v. Viray*, *supra*, 134 Cal.App.4th at p. 1217 ["order here is entirely unsupported by evidence that the amount requested by the public defender . . . represents the actual costs to the county of the services provided to defendant"]; *People v. Poindexter* (1989) 210 Cal.App.3d 803, 810-811 ["Penal Code section 987.8 gives the trial court discretion to determine a defendant's ability to pay the cost to the county of legal services provided

---

**3**    Montoya also complains that over this period of time he will actually have paid approximately $35,000 after taking into account "the usual interest rate of 10% per year that is typically assessed against court ordered debt judgments." The problem with this argument is that "[t]*he Penal Code does not provide for accrual of interest on* restitution fines, *attorney fees* and probation costs. The Penal Code only permits enforcement of the order for such amounts in the manner provided for enforcement of money judgments. Accordingly, the trial court may not order entry of a money judgment with its accompanying interest for the fines, fees and costs ordered at sentencing." (*People v. Hart* (1998) 65 Cal.App.4th 902, 906, italics added and omitted.)

and to set the manner of payment, but does not give the court any discretion to determine the reasonable value of those services. [Citation.] The court must review evidence of the actual costs to the county before it can assess costs or attorney's fees to the defendant."]; *People v. Cruz* (1989) 209 Cal.App.3d 560, 565 [purpose of section 987.8 "is best served by construing the statute in such a way that the 'cost' to which the statute refers is the actual cost incurred by the county in providing legal assistance"]; *People v. Harrison* (1981) 118 Cal.App.3d Supp. 1, 6 ["amount sought is the cost to the county of providing legal services to the particular defendant"].)

However, questions apparently remain as to how, exactly, those "actual costs" should be computed. *People v. Cruz*, *supra*, 209 Cal.App.3d at p. 566, held: "[T]he word 'cost' as used in section 987.8 means the cost of the legal services provided to a criminal defendant as represented by a pro rata share of the public defender's budget. In addition, 'cost' includes any proven expenses to the county established by the evidence, such as investigator's fees and expenses, expert witness fees or expenses, long distance telephone expenses, etc." *Viray* disputed the accuracy of this method: "[I]f the public defender's entire budget is used to determine the pro rata hourly cost, then an *additional* charge for 'proven expenses' would entail a double recovery, i.e., the actual costs of such extras' and then a pro rata share of the same items. A better formula would derive an hourly rate from the office's budget for *labor* costs, add a pro rata share of fixed office overhead (e.g., rent), and then add any additional expenses shown to have been incurred. An even more reliable determination of actual costs could be made, with seemingly minimal burden on the public defender, by deriving hourly labor costs from the *actual compensation* paid to persons working on the case. We do not decide, however, whether some such more precise approach should be required. So long as there is substantial evidence of the actual cost attributable to the case in question, an order allowing that or a lesser amount is adequately supported." (*People v. Viray*, *supra*, 134 Cal.App.4th at p. 1217, fn. 16.)

Montoya complains that in his case "there was no evidence of any itemized breakdown of the hours that the public defender expended . . . . The only reference is to

8

some sort of public defender fee calendar that the court apparently examined following appellant's trial. Thus, under the reasoning of *Cruz* and *Viray*, there was not substantial evidence to support the trial court's determination of the claimed reimbursable costs." Montoya adds: "[A]ppellate counsel has examined the court file and the exhibits for appellant's case and was unable to locate the fee calendar the court referred to."

The Attorney General replies: "While some courts [referring to *Cruz* and *Viray*] have required itemized statements to justify reimbursable trial costs and expenses, that is not the only reasonable manner to determine the appropriate costs. . . . [¶] . . . [¶] Here, the trial court used an *approved* fee schedule authorized by the county to assess appellant's reimbursement costs. Thus, substantial evidence supported the court's order."

However, on the state of the record before us, it is unclear if that fee schedule reflects actual costs, or how those actual costs are calculated. We seem to have only this off-hand remark made by the trial court to defense counsel: "This is your list from your office of the costs that are being recovered." In these circumstances, it is appropriate to remand this matter to the trial court for a clarification of its basis for fixing Montoya's reimbursement amount at $10,274.

3. *There was sufficient evidence of Montoya's ability to pay the reimbursement amount.*

Montoya contends there was insufficient evidence he was financially able to reimburse the county for the cost of the legal assistance he received. This claim is meritless.

Montoya argues: "Based upon the information contained within the financial evaluation, appellant's then present financial situation can best be described as an individual who was currently homeless[4] and unemployed and with a spotty employment history, who had current assets of no more than $6000.00 and current debts totaling $28,000.00. This is hardly an individual who could reasonably be determined to have been able to reimburse the county for the entirety of the claimed $10,274.00 costs within

---

[4] Montoya told the financial evaluator he had received an eviction notice on February 5, 2013, for non-payment of rent.

9

a six month period following the hearing, without suffering some sort of undue hardship."

But, as we have already discussed, *ante*, the trial court did not order Montoya to pay the total reimbursement amount within six months; the court only ordered Montoya to pay $25 per month. We do not see why that should cause him undue hardship. When defense counsel began to dispute a charge for "court expert fees," the trial court said: "Counsel, he posted over $10,000 for bond. He testified he's got a full-time job now on a new TV series." And, at one point in these proceedings, the court said to Montoya: "You got on the stand, said you were just hired for a reoccurring [*sic*] role in a television series and you even named the actors and actresses in the series." Although Montoya replied, "Don't have that anymore because I'm here," this shows he was employable.

We conclude there was sufficient evidence Montoya had the financial ability to repay the county at the rate of $25 per month.

## DISPOSITION

The matter is remanded to the trial court for further proceedings in order to determine if the amount Montoya was ordered to reimburse the county under section 987.8 has been properly calculated.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


KITCHING, J.


ALDRICH, J.


11